Before we begin, for the record, we would like to state that Justice Brennan is a member of this court on this case, but due to some unforeseen circumstances, a death in the family is unable to participate in the oral argument today. But he will be a full participant on this case. He has read the briefs. He will have the benefit of your argument today as well. And so that's why you'll see two justices here in your oral argument at this time, okay? Understood. Thank you. I believe, Mr. Vogler, you may proceed.  Vogler? Vogler? It is Vogler, yes, Your Honor. Thank you. May it please the court, Your Honors, my name is Matthew Vogler, V as in Victor, O-G-L-E-R, on behalf of Edwin and Raquel Johnson. This case presents two discrete issues that contain multiple sub-issues, but focusing broadly on the discrete issues, the first is that the trial court did not properly consider the proofs in granting summary judgment, which was decided prior to the Asetoro decision, which clarified that lenders are to strictly comply with the terms of their mortgages as a condition precedent to bringing the action. The second discrete issue that we have to address or that it presents here is whether in an adjourned sale, the exception to the general rule that notice of the adjourned sale has to be provided in the same manner as the original notice of sale. The question is whether or not the language is to occur has meaning that or means that at the time the sale is adjourned, it has to be announced a new date certain for it to be determined that that note or that sale is to occur within 60 days. Looking at the first issue, the trial court considered the summary judgment motion filed by the lender prior to the appellate court's decision in Asetoro, and in the record, it's made abundantly clear that the lender has not even alleged a date of mailing, which is a necessary element to determine whether or not my client was afforded the statutorily required cure period. Now, there's a lot of discussion in prior argument at the trial court level, and there is discussion in the briefs that attempts to deviate from this issue and focus on other cases like Bukowski where it's been held that allegations of non-receipt are insufficient to deprive a lender of standing. That isn't what my client is alleging. My client isn't alleging non-receipt like in Bukowski. My client is alleging that they were not provided the statutory cure period of 30 days. In order to establish that they were provided such a cure period, there is no such evidence. The lender has repeatedly attempted to prove up this evidence. They've presented multiple affidavits in support of their position that the notice was mailed, and the allegation or the assertion that the notice was mailed is contained in the affidavit, and that may be accepted as true under the standard espoused by the lender, but that fact that the notice itself was mailed is insufficient to demonstrate compliance with the length of the cure period, and Asutura makes clear that these are conditions preceding. They've attempted to present evidence of the mailing. That evidence was completely unrelated to the actual mailing at issue. It dealt with something totally unrelated. So, at the end of the day, what we see is that the lender has no evidence of when this occurred. They simply cannot meet the standard to prove that the 30-day notice provision was strictly complied with. Now, in deference to the trial court, as I've stated previously, this original summary judgment decision was rendered prior to Asutura. It was rendered prior to the appellate court clarifying that these requirements in the mortgage that the lender provides to a borrower are to be strictly construed against the lender and that they have to comply as a condition preceding. We raised this issue after Asutura via 1301 petition. It's significant because there had not yet been a final judgment entered, and the 1301 standard is far more permissive than the 1401 standard, which would apply to a collateral attack post-entry of judgment. Because a judgment hadn't been entered, the more liberal 1301 standard applies. And under 1301, specifically under the Kessling decision, the courts have held that the petition must be granted where a fundamental right to justice is violated. And this is mandatory. Where fundamental justice is violated, a 1301 petition must be granted. And the West decision that we cited in our brief states that it would be unjust to allow a judgment to stand where a defendant has indicated that it has a meritorious defense, which is precisely what my client did in their first and initial response to the complaint, where they alleged that the lender had not complied with the specific provision that was contemplated or that we're referencing here, specifically the 30-day notice provision. We've alleged that since the beginning, and the trial court has never grappled with it. They didn't grapple with it at first because it wasn't clear that they were required to grapple with it. After Asutura made that clear, we raised the issue, but the trial court denied our 1301 petition. It's our position that that is an abuse of discretion that is manifestly unjust. And that position alone is sufficient to warrant reversal. The other issue pivoting and turning gears is totally separate and apart from the issue that we described about the initial pleadings and the initial grant of summary judgment in 2015. This separate issue relates to the adjournment of the sale in this case, which occurred prior to the previously scheduled sale date. It occurred the day before. So with a little bit of context, as I'm sure the court is aware, this is a fairly old case. The original action was filed in 2014. My clients have spent in excess of hundreds of thousands of dollars in an effort to try to stay in their home. This isn't the case of people who have been simply playing out the string, raising specious arguments in an effort to use procedural delay to forestall all of this. My clients have expended significant resources and have by agreement been able to forestall the sort of effect of this case at various points through negotiation with the lender. Now, at the time that this issue with the notice occurred, my client had a pending matter in Cook County. He was the plaintiff in a lawsuit with what was anticipated to be a seven-figure recovery, and it was his expectation that by that recovery, which was at the time of the notice of sale very close to occurring and did ultimately occur shortly after the sale was stayed, it was my client's position that he would be able to repay the lender and keep the home, or if an agreement couldn't be reached with the lender, potentially purchase the home at the sale. But my client was never provided notice of that sale. I believe he received only the one because the first notice of sale was vacated based upon their failure to comply with the 10-day notice. They didn't provide notice 10 days prior to the sale. So that was actually vacated. They provided new notice immediately thereafter of a new sale date, and that was the sale date that my client was granted a stay. To my knowledge, it was just the one. There may have been, and I'm talking specifically about the post-COVID stays, there may have been stays that occurred prior to COVID. There may have been stays that occurred as a result of COVID. I don't know the specific number. The matter was stayed a number of times, but frequently it was stayed by agreement of the parties. In light of my client's payments. Anyways, the issue, Your Honor, is that this stay, the one that we're referencing specifically, the stay that occurred in October of, I believe, it was 24, it occurred the day before the sale was to occur. And at that time, there was no order entered related to that stay. I believe it was a procedural infirmity. It looks as though the lender attempted to resolve that by subsequently in January of the following year, having an order entered that granted the stay. But even in that subsequently granted order, it never states a date certain upon which the sale was to occur. And our argument, Your Honor, is that that defeats the purpose of this exception to the general rule. And as I stated previously, the general rule here is that if a sale is adjourned, notice has to be provided in the same manner that the original notice of sale would have been provided. There is an exception, however, if the sale is to occur within 60 days. That's the standard. But it seems backwards to say you don't actually have to say when the sale is going to occur at the time of adjournment. You simply have to make sure that it happens within 60 days. And that's the lender's position, is essentially it doesn't really matter what happens at the time of adjournment so long as we stay the sale or excuse me, as soon as we conduct the adjourned sale within 60 days. I don't think that that creates good public policy to say that we don't have to announce when the sale is going to occur. We can simply adjourn the sale. And as long as we come back and we conduct the sale within 60 days, we don't have to tell anyone. And that's exactly what happened here. They represented repeatedly that they had provided us notice. And then when pressed on that, they admitted, well, actually, we can't find any record that we provided notice. And so they agreed to vacate the sale. And we went through the whole rigmarole again. But they were simply noticing up the same sale. So the same infirmity still applied. The same notice issue applied. And they repeatedly relied at the trial court level, the lender did, on their argument that, well, this would get posted on the sheriff's website. This is something that would have been known. Well, there are certain cases that may support something similar to that line of thought. But in the cases that address this issue, specifically the O'Malley decision, that adjournment was announced at the physical sale that was originally scheduled. And the point that's been made is that typically the sheriff will announce this sale has been adjourned to X date. And in O'Malley, the party challenging the adjournment of the sale, or the lack of notice, they never contested that that didn't happen. They never alleged that there wasn't an announcement made and they were physically present at the sale. Here, the sale was adjourned prior to its originally scheduled occurrence. It was adjourned the day before. So my clients would have had no reason to physically attend the sale where the sheriff may or may not have announced the subsequent date of adjournment. And also, if you look at the procedural history, the legislative history subsequent to all of this, the legislature amended the applicable rule to include the sheriff posting the date on the website as a sufficient means of providing notice. So now, as it stands today, the lender's position may have more merit because the language of the rule itself says that the borrowers are to consider the website as a sufficient means of identifying when the adjourned sale is to occur. But that is not what the rule said at the time. And the legislature's need to modify the rule to so state that indicates that there was some incongruity at the time that my client was going through this adjourned sale process. So the amendment, Mr. Vogler, the amendment you're arguing addresses what you've been arguing. But what was the intent of the amendment to allow website notice? It seems to be, yes. It seems to be. What was the notice requirement before that amendment? I think the notice requirement before that was that the adjourned sale date had to be announced at the time. If they were to avail themselves of this 60 day exception, it would have been noticed at the time. And it makes sense, Your Honor, because the point would be if at the time of the adjourned sale, we say we're adjourning in 45 days and in 45 days time, we'll conduct another sale. It would seem to promote form over substance to say now the lender has to go back and send another notice, make another publication, go through all the rigmarole that's associated with that. But where it's not certain and nobody is aware of when that adjourned sale is going to occur, it stands to reason that the lender should be obliged to follow the same rules that they should provide notice of the date. And they never did. And that presents the primary issue, Your Honor. And we believe that on that issue, Judge Chapman grappled with the same sort of distinction of what is the significance of is to occur. And Judge Chapman ultimately held that is to occur simply means that it has to occur within 60 days. And he sort of sidestepped and said, there's nothing that requires the lender or the lender to actually state when the notice or excuse me, when the adjourned sale was to occur. And our position is that that isn't a correct interpretation of the law as it was at that time. And we believe that that was an error, that it only makes sense. Because, again, we reiterate that the default rule is that notice has to be provided again. This is an exception to the default rule. And the exception doesn't make sense if they aren't to notice the sale or notice a defined date at the time of adjournment. Because the whole point is, if at the time of adjournment it is noticed, the person who would potentially need notice should be there and they should be aware. And with that, Your Honor, we would say that, first, on the first issue, the trial court didn't properly consider the proofs. It's clear because in light of the Asitara decision, the trial court wasn't aware that it ever needed to consider the proofs. And secondly, we believe that it is necessary that the notice provision, the exception to the notice rule requires that the date be defined at the time of adjournment. And for both of those reasons, we would ask that the court reverse both the grant of summary judgment in 2015 as well as the confirmation of sale for the reasons that we've stated in our briefs. Thank you. Any questions to Justice Peterson? I do not. Okay. You'll have time in reply, Mr. Vogel. Okay. Yes, Your Honor. Counsel Simpson, you may respond. May it please the court. My name is Katie Simpson. I represent Plaintiff-Appley U.S. Bank National Association as trustee for the RMAC Trust Series 2016 CTT. I wanted to say, first of all, thank you to the justices for allowing me to proceed with my argument today. And with that, very simply, this court should affirm all of the rulings of the lower court. First, because summary judgment was properly granted, even under a no-vote standard, because there was a judicial admission in their answer, the borrower's answer. A briefing schedule was set on the motion for summary judgment, which contained an affidavit of mailing of the notice of default at issue. The borrowers did not respond to that motion, did not request an extension of time, and failed to appear at the hearing. Secondly, with regard to the motion to vacate, under an abuse of discretion standard, the ruling should be upheld, because substantial justice had been done between the parties where the issue had already been litigated, and there was no motion to reconsider the motion for summary judgment ruling. Finally, the order confirming sale was properly granted, because the borrowers had not argued, articulated any provision of 1508B that would provide a basis to set aside the order confirming sale. Now I'll touch on some of counsel's points that he raised this morning as well. But first, just to walk through a couple of things. First, the Asituro case. Counselor Simpson? Yes. Let me interrupt, and it's a little off base, perhaps, from your argument right now. But what kind of mailing would that be? Regular post-mailing? Yes, Judge. This would be U.S. first-class regular mail. Section 15 of the mortgage, which the borrowers obviously signed, states that any notice mailed is deemed to have been provided on the date of the notice. It has been deemed given on the date of the notice. Again, that's paragraph 15 of the mortgage. The borrowers agreed to this language. The notice at issue is dated May 7th. I understand under the contract, all of that. But why, as a practical measure, wouldn't a lender? Why wouldn't they send these notices, register to mail, return receipt, and put together an evidentiary record to prevent a lot of this stuff happening? I understand your question, Your Honor. I think you did cut out there for a second, but you're wondering why they don't just do certified mail. No, that's the better mail, because then you create an evidentiary record. That would be, I agree, that makes sense. If you want to confirm that someone received a piece of mail, you would send a certified mail return receipt. Which is forecasting a common answer. Never heard, never saw, never received. Okay, when service is raised as an issue of defense, right? Correct. How much does it cost? I mean, I'm talking the industry. I'm not talking your client. I'm talking the generic industry. I mean, if you want to make sure. Seems to me it's pennies on the dollar. I'm having a little trouble hearing you. I'm sorry. Is the rest of the court having trouble hearing? I'm also having some issues, Your Honor. A little bit. Yeah, okay. Okay. Anyway, I'll move on with your argument. I'm sorry I took up your time on that. That's okay. I think I can address. You're wondering why, how it should be cheap to do this, right? So the mortgage allows for mailing to be deemed sent and received on the date, if sent by first-class mail. When we send it outside of those means, then we do have to create that record. The presumption is built into the mortgage because it also does align with the IMFL, the Illinois Mortgage Foreclosure Law, which presumes that all notices are properly sent. It's part of the deemed and construed allegations in the statute that relates specifically to this type of action. So for a mortgage lender to go outside of those bounds would create an upward, an uphill battle when they are mailing out who knows how many of these notices. To have conformity is probably more of an industry standard creation. And to go outside of that industry standard would not only create an uphill battle, but, you know, would leave room for different arguments to be made. And it's, you know, why would you go out of outside of what the binding contract says you're permitted to do? It just could create, you know, you're opening a can of worms. And there is subsequent case law. I believe it's in the briefs. It's called ruin seeing probably butchered the pronunciation of that, but it does raise an issue of when a notice of default and acceleration is sent via certified mail return receipt, that green card is necessary to create a record of receipt. But receipt is not required under Illinois law. There's plenty of case law that says that. I don't know if our briefs contain that case law because it's, it's such a commonplace argument, but to be certain, the date of the notice is May 7th, 2014. The date to cure by was June 11th, 2014. That's 34 days. The affidavit does state that it was mailed on this date. And once again, the reason that the summary judgment issue here is so big. And if we go back and look at the affidavits, once again, a briefing schedule was set. The defendants had this information before them. If they wanted to make an argument that, Hey, we don't think that you actually mailed this out on this date or we never received it. And this is why, or anything, any argument that they wanted to raise at that time, or if they wanted to raise the 30 day period, wasn't actually 30 days with, which is what the defendants are getting out with the Astuturo case, which was later decided. That should have been addressed at summary judgment. They didn't file a response. They didn't fight. You know, bother to file a motion for extension of time. They didn't even appear at the hearing. Then almost coming to my next point two years later, They filed a motion to vacate. And although timeliness and the need for a meritorious defense aren't necessary for a 1301 motion to vacate. The true question is in a council mentioned this. The case law says that you have to vacate an order when, where there has been a fundamental justice has been violated, but it hasn't been articulated what that fundamental justice is that has been violated. Defendants indicate that they had a meritorious defense, but going through the rulings and the transcripts again, the defense had already been decided. At first the defendants raised the affirmative defense as you didn't send the notice. What they wanted to allege because of the Astuturo case, they wanted to amend it to say, well, the 30 day period is wrong again. They had that information at summary judgment and they chose not to address it at summary judgment. And where a motion to vacate is properly denied when the evidence was in the movements possession and could have been presented prior to judgment that is St. Ann's hospital, 132 Illap 3D for 1985. So, you know, it's, there's no, in terms of an abuse of discretion, it wasn't an abuse of discretion for the trial court to deny the motion to vacate particularly given that this wasn't a default order. 1301 relates specifically to default orders. The defendants here had the opportunity to, and did raise a defense that had been addressed and summary judgment is proper when there is no counter affidavit. And I know what counsel's writing down, but yes, you also have to look at the affidavit that's presented and that must be sufficient. And judge Gibson, in this case, who has presided over thousands and thousands of foreclosure cases, looked at our affidavit and found that it was sufficient counter affidavit or not. It was sufficient to prove that the mailing had gone out. It went to the borrowers. They had 30 days to cure and that that cure period didn't happen. Also the defendants admitted in the judicial, in the deemed and construed allegations that they, that the notice had been properly submitted and just a aisle of a deemed and construed allegation itself doesn't even raise a genuine issue of material fact. So all of this the fact that the deemed and construed allegation as to the notice being sent had been admitted in the answer. They failed to file a response, much less a counter affidavit to rebut the mailing issue that they seek to undo over two years later without filing motion to reconsider. And the fact that they really could have and should have addressed this at the court did not err in denying the motion to vacate and by granting summary judgment. If there's anything else I wanted to address, not for those two arguments. And finally, with the order confirming sale, it's not argued anywhere that justice was not otherwise done. Defendants take issue with the notice of the sale and the continuance within 60 days, but section 1507, which governs confirmation of sale, you have four options. Terms of the sale were unconscionable. The sale of conduct, the sale was conducted fraudulently. Justice was not ever wise done and a notice was required in accordance with terms of section C. So 1507 does permit a sale to continue to be adjourned within 60 days without subsequent notice. I don't think that is disputed here that the sale occurred within 60 days of the original sale date. And to answer your honors earlier question or your justices earlier questions, the defendants received five stays of the sale. They filed five motions to stay the sale, which were all granted. The last of which was granted on October the 13th. And that order stated that a new sale could go forward after November 17th, 2021. And at that point, the defendants were on notice that the sale could go forward after that date. As diligent as the defendants have been in litigating this case for nearly 10 years, they filed their answer in affirmative defenses on February 8th of 2015. They've received multiple stays of the sale. They've been active throughout the litigation. They filed two motions to vacate a motion to reconsider and have responded to everything except the motion for summary judgment. After all that and counsel's argument is that it's not fair to not get new notice. Why wouldn't you be curious as to when the sale date is? They can't, you know, it's to, to, to take the position that the adjournment of the sale, you have to schedule the next date at the time of adjournment. Doesn't make sense. They have to contact the sheriff's office, see when everything's available, see what dates are available. So it's quite frankly, not possible to schedule the adjourned sale date at the time of adjournment. And it would swallow up the 60 day rule exception. If every time, you know, a sale was continued within 60 days, you have to send the notice anyway. There is an aspect of diligence that should be positive on the defendants who have been very active in this case. It seems odd that they wouldn't wonder or be diligent about checking the, the website to see when the scheduled sale date is knowing that it can occur after November 17th, 2021. And for these reasons, your honor, we believe that summary judgment was properly granted where there was no opposing counter affidavit. And our affidavit did sufficiently submit that the notice of default was properly mailed. There was no abuse of discretion in denying the motions to vacate where the issue to be litigated had already been decided. And finally the order confirming sale was properly granted because justice was done. And the statute clearly states that you don't have to provide additional notice if the sale is continued within 60 days, which from the record it clearly was. For these reasons we believe that the appellate court should affirm all of the judgments below. Thank you. Justice Peterson questions. One quick question. So under the 1301 motion, you know, it should be granted for this concept of substantial justice. Give me an example of what would be substantial justice that this would need to be granted versus what we have. You're saying before us it doesn't need to be, it doesn't fall under that. Well, give me an example of what would. So substantial justice. And again, typically these are brought for default orders, entries of judgment and within the foreclosure context specifically because Illinois courts do liberally grant these. The reason they do is because Illinois courts prefer to adjudicate matters on the merits as opposed to on default. And for instance, in the case of PNC versus Cryer, which is cited in both of our briefs that 1301 motion to vacate a summary judgment was denied particularly a, because it was summary judgment and also because again, the issues had already been litigated. So to answer your question more specifically, it would be appropriate to grant a motion to vacate a default judgment or a summary judgment if the issues had not been litigated before. But here, this is the same issue. Thank you. Okay. Thank you. Further questions. Thank you. Counsel counsel Vogler, you may reply. Yes, Your Honor. I want to first touch on the last thing that my esteemed colleague, Ms. Simpson stated, which was that it would be appropriate to, to grant a 1301 petition where these issues were not litigated on the merits. And that's precisely what we see here. They are claiming the lender is claiming that the mere failure to respond creates some sort of judicial admin admission that is tantamount to actual litigation. And that's not the case. I mean, the case cited by counsel, the room saying decision, which I'm sure I equally butchered states that the specific denial that is an issue in a rule one 33 C issue, which is what opposing counsel or which is what the lender has raised. That specific denial may be contained in an affirmative defense. And that's precisely what the affirmative defense contained. The issue is that, and they rely on judge Gibson's review of the proofs and they make the same sort of conflation that this court should not countenance. And that specific conflation is between the date of notice and the date of  So you can print any date that you want on a piece of paper. And that date may serve as evidence of mailing. It may indicate when something might have been mailed, but it does not establish mailing, which is the standard we're really talking about here. And it's cited in the briefs and the Sakura decision. We're really talking about the mailbox rule and rule 12. And under rule 12, you need to establish not the date of the notice. You need to establish the date of mailing. And in the Sakura decision, the courts have held that simply relying on the face of the notice for the date of mailing isn't correct. And so the issue we have is that yes, judge Gibson reviewed the summary judgment motion, judge Gibson may or may not have looked at the affidavit that was attached, but the affidavit itself does not ever indicate a date of mailing that fact itself, which is uncontested. They don't indicate that the, that the affidavit indicated when these documents were mailed, rather the lender says, well, they clearly were mailed at some point we've, we've represented that they were mailed. They were sworn to have been mailed, but they don't ever say when that mailing occurred, they simply then want to make the leap to while the date of the notice is correct. And so assuming that the mail went out on the date of the notice, then they would have complied. The issue, Your Honor, is that that is not proof that is sufficient under rule 12 as has been set forth in Sakura. So this reliance on, Oh, well, it's been litigated. It hasn't. The Asa terror decision was decided after the summary judgment motion was, was relied upon. And counsel has admitted that the mere non response to emotion for summary judgment, doesn't relieve the trial court of its obligation to review the moving parties entitlement and to strictly construe the papers in support of summary judgment against the movement that wasn't done. And that may not have been done or it may, the failure may have been unintentional because the court didn't have the guidance of Asa Turo. But then subsequently, when my client raised this issue, the trial court refused to say, Oh, let's go back and actually look at the merits, which is what the liberal 1301 standard requires and what it suggests. If they would have simply gone back and asked to the lender, just show us when you mailed it. That's all they had to do. And the reason that that didn't happen is because the lender has repeatedly fallen on its face, trying to establish mailing. And they can't because as is the problem with these mortgages, the paper moves. This was a JP Morgan chase loan. Initially it was transferred to another servicer, which has again transferred it to a subsequent servicer. And ultimately it ends up in us banks possession. And they want to look back on incomplete records that they don't have actual knowledge of and say, well, let's just paper over all of this. Let's just say that the notice date on the paper is fine. We'll go with that. The Asa Turo decision says you absolutely can't do that. That's first. They also want with respect to the second argument that we've made, they also encourage the court to sort of look through the, the substance of the rule, which they admit. I mean, there's no contest that they did not provide notice of the adjourned sale date. Their position is basically, well, it happened within 60 days. So that's subsumed by the rule. And our position is that that isn't, that that's infirm and that that's not a legitimate basis. And they reply, you know, they, they want to put the onus onto my client, onto the borrower. And they say, well, this has happened for so long. The reason that it's happened for so long. And the reason that so many stays are granted in many of these instances, as has been set forth in the brief is because the lender and my client were trying to work out a solution. My client has put forth significant effort and money. This isn't my client using procedural devices. This isn't over the objection of the lender. The lender works on many of these issues. We'd have to reverse your red lights on there. I apologize, your honor. I missed that. Okay. Thank you. Thank you. Thank you. Questions justice Peterson. No. Okay. Well, thank you counsel, both for your fine arguments in this matter this morning, it will be taken under advisement. A written disposition shall issue. And once again, for the record, justice Brennan is a full participating member on this case. And so from that point at this time, the clerk of our court will escort you from our remote courtroom. And we'll proceed to conference. Thank you. And condolences to judge Brennan on the, on the passing of the family member. Yes. Thank you. Thank you. Okay.